**GREAT LAKES PIPE LINE COMPANY,
a corporation, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Nos. 15247, 15471–15473.**

United States District Court
W. D. Missouri, W. D.

Aug. 15, 1968.

As Modified Sept. 20, 1968.

Arthur L. Biggins, Tax Division Department of Justice, Washington, D. C., for plaintiff.

John L. Kapnistos, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM OPINION

COLLINSON, District Judge.

The plaintiff has filed four separate suits (consolidated by order of the Court) for the recovery of income taxes paid in the years 1958, 1959, 1960 and 1961. The factual and legal issues in each case are identical, and involve the right to depreciate "right of way acquisition costs."

Although plaintiff is in the process of dissolution, the parties have stipulated that plaintiff is the real party in interest.

Plaintiff was a common carrier of petroleum products by pipeline. As a common carrier it kept its books of account in accordance with regulations promulgated by the Interstate Commerce Commission. Under this system the plaintiff's investment in its right of way was carried as a separate item in the total investment in the "pipeline system." Plaintiff's "right of way" consisted of easements over many tracts of land in ten states. All of the easements were perpetual, but varied in form. All provided for payment of a "roddage" fee to the landowner, and for payment of all damages caused by entry on the land. Most, but not all, granted the right to install more than one line, and apparently all granted the right to remove and replace any line constructed. Most provided for a nominal consideration for the easement in addition to the roddage fees. The principal costs of acquisition were: (a) Payments for the easement and roddage to the landowners, (b) recording fees, (c) abstract and title guarantee fees, (d) salaries and expenses of right of way agents and other employees performing right of way work, and (e) rental of office space and equipment, and automobile expense.

The other items in the cost of the pipeline are the cost of the pipe, cost of fittings, and cost of construction. Beginning in 1937 the plaintiff deducted annual depreciation on the entire investment in the pipeline in computing its income tax. This was allowed by the Internal Revenue Service until its 1952 audit, at which time it disallowed depreciation for the right of way costs for 1947 and all subsequent years.

The Internal Revenue Code of 1954 authorizes a deduction for " * * * [E]xhaustion, wear and tear * * * (1) of property used in the trade or business, or (2) of property held for the production of income."

The Treasury regulations contain a provision in regard to depreciation of intangible assets. Section 1.167(a)–3 (1934 Code) provides that:

If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance.

Since the taxable years here in question, Rev.Rul. 65–264, 1965–2 Cum.Bull. 53 has been published, which provides in part:

* * * [I]f the taxpayer can demonstrate in a particular case that certain easement acquisition costs will have a limited life because they will no longer be useful after the expiration of the useful life of a related pipeline, then such costs may be depreciated.

The taxpayer must establish that the intangible assets will not be useful in the construction of additional pipeline. For this purpose, the term "additional pipelines" includes both looplines and any replacement pipeline in the same trench.

The first of the above regulations, but not the second, was in effect when the case of Northern Natural Gas Co. v. O'Malley, 277 F.2d 128, was decided in this circuit. That case teaches that the cost of right-of-way easements of a pipeline company may be depreciated if there is "definite proof that the asset is one definitely undergoing exhaustion." However, the depreciation allowance in that case was predicated upon entirely different factors than the claim in this case.

In this case the plaintiff contends the easements will no longer be useful after the useful life of the installed pipe for which they were obtained, and should be depreciated at the same rate as the related pipeline.

The defendant contends that the plaintiff has not shown by the preponderance of the evidence that these easements have a limited useful life that can be estimated with reasonable accuracy at this time.

Since the defendant recognizes and allows a definite depreciation schedule for the pipeline itself, it follows that if plaintiff has proved that the easements have no useful life beyond that of the pipeline it has sustained its burden of proof.

The principal argument made by the government in this case is that the pipeline "system" is made up of the various components discussed prior; that the pipe and fittings may wear out, but they are repaired and replaced and the "system" as such has no discernible terminal date; and that therefore pipe and fittings and their installation costs can be depreciated, but the easements, being perpetual, cannot be.

The evidence on this issue shows that whenever leaks develop in the line (generally from corrosion) they are repaired by being either spot welded, patch welded, half soled (half a pipe welded over the old pipe), or full soled (a larger pipe placed over the old pipe). Occasionally, if the damage is too severe, a piece of pipe may be replaced. However, the evidence shows that these replacements and repairs are all emergency situations. Because of the nature of plaintiff's business any interruption in the flow through the pipeline has to be held to the mini-

mum. All preparations are made to make the repair, flow is stopped, and the repair made in a matter of hours. There is no evidence that there has been any attempt to replace new pipe for old in any quantity in the 6000 miles of pipeline, or even in the original single-line of 2650 miles (which was laid as uncoated pipe and has the most corrosion problem).

No authority has been presented, nor argument made, that the pipeline itself cannot be depreciated because leaks can be, and are being, repaired. And the evidence further shows that the absolute necessity of no extended interruption of the service makes any large scale line replacement impossible from an economic viewpoint.

This raises a second question. When the original line is no longer of any economic value, under the terms of most (if not all) the easements, the plaintiff has the right to reopen the ditch, remove the pipe, and replace it with a new line. The overwhelming weight of the evidence in this case is that this procedure is economically unsound, and more expensive than laying a new line in a different ditch.

The third situation presented is that under some of the easements the plaintiff is granted the right to construct two or more (unlimited) lines across the property upon payment of the same roddage fee. (Part of the plaintiff's system now has four parallel lines.) The question is then, does this perpetual right to lay additional lines (which is not contained in all the easements) establish that the costs of obtaining these easements is a non-depreciable asset. The evidence on this was interesting and undisputed. The original easements were obtained, of course, for the express purpose of constructing the original single line. Some of the printed forms are very broad, including the right to erect telephone and telegraph lines, and to install an unlimited number of pipelines in unspecified locations. Others granted only a limited width easement, or limited number of lines. Apparently, when objections were made by the landowner, ob-

jectionable features, such as telephone lines, were crossed out. The entire cost of acquiring these easements was charged, under the ICC accounting system, to this original line.

Thereafter when plaintiff decided to build a parallel line, because of increased traffic, the procedure was almost identical with the original procedure. Aerial photography and mapping was necessary, to determine where new buildings had been erected, ponds constructed, or other obstacles created since the original line was built. The same title searches had to be obtained in order to determine the present legal owners. All the owners had to be contacted by right-of-way men (many of the new owners knew nothing about the terms of the easement, or even its existence), and roddage fees had to be paid. (The testimony was that roddage fees were paid even if the easement did not require this payment for additional lines.)

In fact, it appears that the only expenses in the cost of the original acquisition which were not duplicated in the construction of a second line were the recording fees of the easements, an infinitesimal figure as compared with the other expenses.

In view of this evidence the Court finds that the perpetual right to lay additional lines which is contained in some (or even if contained in all) of the easements does not, from any practical viewpoint, have any economic benefit that would defeat plaintiff's right to depreciate its acquisition costs of the easement.

Since this case was submitted, the Court's attention has been called to three recent reports of Trial Commissioners of the Court of Claims. They are Badger Pipe Line Company v. United States, Ct. Cl., 401 F.2d 799; Texas-New Mexico Pipe Line Co. v. United States, Ct.Cl., 401 F.2d 796; and Panhandle Eastern Pipe Line Co. v. United States, Ct. Cl., Nos. 547-58, 166-60, 400-61. The issues in each of these cases were identical with those presented in this case. Varying contentions were made by both taxpayer and the government which

were not raised in this case, but the facts are identical and the Commissioner's well reasoned reports reach the same conclusion arrived at by this Court.

This Court, therefore, concludes that the right of way acquisition cost is an intangible asset; and finds that the useful life of plaintiff's easements is identical with the useful life of the installed pipeline for which they were acquired; and that the plaintiff, in accordance with Rev.Rul. 65–264, supra, is entitled to depreciate the unrecovered cost of acquisition of this right of way over the remainder of the useful life that has been established and allowed for the depreciation of the related pipeline. By stipulation in this case the parties state that there is no dispute as to the average account balance subject to this depreciation or the rate of depreciation allowed by the Internal Revenue Service for the pipeline itself during the taxable years in question.

The necessary computations to determine the amount of the judgment for plaintiff in each of these cases should be quite simple. Plaintiff's counsel shall prepare, serve on defendant's counsel, and file with the Court a form of judgment within fifteen days from this date. Defendant shall file any written objections to the form of judgment within ten days after it is filed in this Court.